Chief Justice Robertson
delivered the Opinion of (he Court.
This case was once before in this court, when the first decree of the circuit court, perpetuating the injunction to a judgment in ejectment against the appellees, was reversed for want of proper parties. — See III Monroe. The proper parties having been brought before the court after the return of the case, and some further preparation having been made, another decree, substantially the same as the first, was rendered ; and the defendants in the court below have again appealed.
As various points are now urged, which were either not presented by the former record, or were not *488 noticed in the opinion of this court which was re-voiced, when, on consideration, the first deeree was reversed for defect of parties, it will he proper, !>e-fore we proceed to state and decide upon them, to present an outline of the case as now exhibited. The facts are not only multifarious, but so vague and imperfect in some important particulars, as f.'o compel this court to resort to deductions not perfectly conclusive or satisfactory to the. judicial mind. For example, the record of the action of ejectment is not exhibited, nor arc the means furnished for ascertaining with certainty what land, or how much, was adjudged to the appellants, or the extent or locality of their respective interests. Other examples of imperfection and confusion in the facts might he added, hut are deemed superfluous. The following brief narrative will present such of the facts as are most .clear and important.
In 1784, Arthur Fox hound himself, by a covenant in writing, to convey to John Craig one third, and to John Hawkins Craig another third of all the land which should be “obtained” on his entry upon “ Buck Run, Rough’s Run and Glenn’s Creek,” in the connty of Woodford. John Craig was, as we inter, the locator. A patent was obtained in the name of Arthur Fox for 1480 acres, (in 1785) founded on the aforesaid entry. In 1785 or 6, and prior to any partition, John Craig sold 100 acres of land to Benjamin Berry, and another 100 acres to SamuBe.rry ; and sometime in 1786, both Benjamin and Samuel Berry were settled, each on the tract which-he had bought from Craig — who shortly afterwards, executed a separate bond for a title to each for 100 acres, to include his settlement, but without any other designation of locality ; the bond to Samuel was dated — 1788; the date of the bone] to Benjamin was — 1786. in 1790, John Craig also sold and covenanted to convey to one Endicut, 80 acres, designated by c.onr«e and distance, and to adjoin Benjamin Berry on the west; that bond was assigned to the said Benjamin in 1795; and not long afterwards, he bought from John Hawkins Craig his entire interest in the 1480 acres. In 1798, having ascertained that an adverse interfered with tfe* *489 100 acres which hud, in the mean time, been laid off to Samuel Berry by survey, and covered about 50 acres thereof on the south side, and considering Crow’s equity superior to that of Fox, John Craig. and Samuel Berry agreed to yield to that claim, and thereupon, in consequence of a compromise between those parties, S. Berry bought the interference for the purpose of securing improvements which he had made thereon, and John Craig laid off to him by another survey in 1801, the same quantity adjoining the residue of his first 100 acres on the west, so as to secure to him 100 acres unincumbered by any conflicting claim. About the same time, Samuel Berrv bought from John Craig 16 acres adjoining (on the west end) the 100 as resurveyed, and agreed to pay, and we presume did pay, to Benjamin Berry one dollar an acre for his assent to the contract, because, as we infer, it was uncertain whether John Craig’s one third, when it should be finally ascertained, would he sufficient in extent to secure to S. Berry the 116 acres, and to Benjamin Berry his 180 acres. In 1802, Robert Johnson, as surviving trustee, to whom John Craig had, in 1791, conveyed for his own use his equity in the 1480 acres, assigned to Benjamin Berry, for himself and Samuel Berry, Fox’s bond to Craig — took up Craig’s bonds to B. and S. Berry, and took from B- Berry a receipt acknowledging that he had taken an assignment of Fox’s bond to Craig in lieu of the bond to himself and Endicut for 180 acres, and of the bond to Samuel for 100 acres, interlined in 1801, with Craig's assent, so as to read, “116 acres Fox having died intestate, commissioners, appointed at the instance of B. Berry acting for himself and also (as it seems probable) for Fox’s heirs (four in number) made partition of so much of the 1400 acres a-, they deemed to have been “saved'’ — allotting to B. Berry . H. Craig’s one third and J Craig’s one third so as to include the land previously surveyed to B. Berry and Endicut, and to S. Berry, in 1801, and excluding the land covered by Crow’s tlaiiri ; and B. Berry stated to the commissioners at the time of the allotment that he represented S Berry, (who wasMiot able to attend to such business) and that, a! *490 though he doubted the superiority of Crow’s claíni» yet5 as Samuel had bought it, unci held under it, he was willing that he might coptinue to hold under it, and that Craig’s bond to Samuel (as it was when surrendered to Johnson) was entitled to be fulfilled equally with the bonds to Endicut and himself: these facts appear from the deposition of one of the commissioners, (H. Bowmar,} but the report of -the commissioners’has not been exhibited, and we have no means of ascertaining, with precision, the quantity or boundaries of the alotment to B. Berry of two thirds or of that to Fox’s heirs of one third. (Maiming 33 acres in consequence of a purchase alleged to have been made to him under an execution against Fox and'John Craig in 1801., and believing-that the residue of the “safe” land, including Crow’s interference, was only about 868 acres,-Benjamin Berry procured conveyances, from three of the heirs of Fox and from commissioners appointed to act for the heirs of the deceased heir of Fox, for 289 acres to himself for J. H. Craig’s third, and for the 180 acres surveyed to him and 'Endicut by John-Craig, and also (assuming to act for S. Berry,) procured, in the same way, conveyances to Mm for the 100 acres as originally surveyed to him by John Craig, m■cluding Crow’s interference, and for :9 acres more adjoining that -100 acres on the west ; -.thus making out and distributing 289 acres for John Craig’s third part. There is no proof that-,S. Berry was privy to or ever approved that arrangement. Shortly after the date of those conveyances, the ejectment was brought, but was not decided until after the,death of S. Berry'. We presume that the object of that suit was to recover the 16 acres, and so much of the 100 laid off to S. Berry, in 1801, as were not included in the conveyances to him procured by B. Berry in 1815. The 16 acres, excepting a fraction of about one acre, are covered by the deeds to B. Berry for 289 acres. It is suggested m the record, but is not conclusively' shewn, that B. Berry had purchased from Fox’s heirs 63 acres, covering the fraction of the 16 acres not included by the deeds for 289 acres, and also covering all or nearly all of the 100 acres claimed and held by the appellees under S. Berry’s *491 survey of 1801, and not included in the deeds 1815 for 109 acres. The original bill prayed for conveyances for the 16 acres and for the 100,. acres as surveyed in 1801, and ever since held, and for a perpetuation of the injunction to the judgment at law,, and the circuit court has decreed accordingly.
The-objections which the appellants- have urged? in this court to the decree of the circuit court, may be reduced to tvvo classes. 1st. Such as deny relief to any extent; and, 2nd, such as would deny relief to the extent to which it has meen-decreed.
I. Two grounds have been relied.on as sufficient basis for the first objection. 1st. That John Craig conveyed all his interest in the land'to trustees for his own use. 2nd. That Craig’s bond to S. Berry was rendered void' by the insertion of the words, 51and sixteen,” in 1801. These positions are not tenable. The second could be made plausible only by the assumption that, as between John Craig and Samuel Berry, the addition to the bond; made in 1801, with the knowledge and consent of both, avoided their contract contrary to the design or will of either ! For it satisfactorily appears, that the irr*terlineation was made at the instance and with the approbation of boih J. Craig and S.. Berry, and in fulfilment of their supplemental contract. The IsC cannot be rendered even plausible by any assumption or hypothesis which the facts of the case would excuse ; for not only would the preexisting equity of S..Berry have oeen unaffected by even a. convey-, anee of the legal title to trustees for Craig’s own use,because in equity he would have been still deemed the true owner, but he had no legal title, and even the equity which he attempted to secure to himself, was curtailed in extent, if not wholly destroyed, by his previous transfers of it, or portions of it, to B. Berry, S Berry and Endicut ; and thus the deed of trust did not divest either S. Berry or Craig of any equity which preexisted in either.
II. In considering the extent to which -the appellees may be entitled to relief, some perplexity and doubt result unavoidably from the scantiness of some *492 of the facts, and the doubtful import of others, indispensable to a just and satisfactory conclusion.
As it has not been intimated that S. Berry ever —"——accepted the deeds procured by Benjamin in 1815, it could not be doubted that the appellees woulo I e entitled to a decree for a conveyance of the legal ¡itle to the 109 acres described in those deeds, and including the 100 acres originally allotted by John Craig, had they desired a conveyance to that extent and that only. But they insist that 50 acres of that boundary should not be included, because their ancestor was permitted to purchase that much from' Vawter, and-to hold it under Crow’s claim, and that, therefore, they are entitled to a decree for the 100 acres as surveyed in 1801, and also to tiie additional 16 acres then bought from Craig, and ever since occupied. On the other, hand, the appellants deny that the appellees have an equitable right to á decree for the 116 acres as surveyed in 1801, because, as they say, the whole of J Craig’s interest ,is not sufficient in quantity to secure to B Berry his 180 acres, and to the appellees the 1.16 acres claimed by them ; and they insist also,, that the appellees should not, in any event, obtain a decree even for the 100 acres as surveyed in 1801, unless they be compelled to surrender the possession of the 50 acres which S. Berry bought from Vawter in 1798, and which constituted a part of the 100 acres originally bought from Craig.
As John Craig yielded to Crow’s claim, and not only assented to the purchase of it by S. Berry, but, in consequence thereof, laid off to him 50 acres so bought from Vawter; and as Benjamin Berry, even after he had acquired a right to J. H. Craig’s third, and whilst lie seems to have been the agent of Fox’s heirs, assented to and acquiesced in that arrangement, and more especially as none of the appellants ever manifested any dissatisfaction until about the time when the ejectment was brought, we shall not., in this controversy, consider the appellees as holding that 50 acres under Craig or Fox. Nor shall we now enquire into the relative nature of Crow’s title. Tire purchase from Vawter seems to have been made in perfect good faith, under an honest and mutual *493 .conviction that his equity was superior to that of Fox; and we cannot, therefore, under all the circuinstances, deem it just to include that 50 acres in the estimate of the quantity to be decreed to the appellees, or to compel them, by a decree in this case, to surrender the possession thereof to tne appellants, who have not shewn, or attempted to siiew, that Fox’s equity is superior to that of Crow, or that there has ¡seen any infidelity, fraud or surprise as to themselves, in the conduct of S. Berry or his heirs. As the case is not prepared so as to require a decision on the original equities of Crow and Fox, we shall not now enquire how far such a decision may be hereafter precluded by the apparent acquiesence of the appellants in tiie purchase from Vawter, and their (consequently) apparent submission to Crow’s claim. But it is evident that, a- the appellees hold under. Crow, and insist on being permitted to do sb, the 50 acres, so held, must be deducted from the quantity which remained for division among the original parties — Fox, J. Craig and J. H. Craig ; and, consequently, the one third to which each was entitled must, for the present, be deemed less by 16J acres.
Were it admitted, as alleged by the appellants, that, after deducting the quantity taken by claims superior to that of Fox, only 9Ó0 acres of the original 1480 remained, and that the 50 acres bought from Vawter, and 33 acres bought by'B. Berry in 1801, under an execution against Fox’s heirs and John Craig, are included in the 900 acres, and mint be counted so as to make out that quantity, still the appellees would be entitled to a decree for the 100 acres as laid off to S. Berry by J; Craig, in 1801. The sale under the execution was made after Craig had surveyed the 116 acres to S. Berry; and therefore, that 116 acres, as well as the 180 previously •sold by Craig to B. Berry and Endicut, were not aifected by the execution; and indeed no part of Craig’s interest passed by the sale under the execution, because, whatever right remained to hi in was o ily equitable, and, therefore, as Fox alone held a legal title subject to the execution, 33 acres of his third part must be deemed to have been sold by the *494 sheriff; and consequently the interest remaining to-Craig, orto those claiming under him, would heo e. tlnr.lof 850 acres, or 283-1; acres, a quantity more ttian sufficient to secure to B. Berry 180 acres, and to the appellees the 100 acres as surveyed in 1801. Wherefore, according to the allegations and admissions of the appellants themselves, the appellees <eem to be entitled to the 100 acres as surveyed in 1801, A-nd it seems to us that, even on the same hypothesis, they are entitled also to the 16 acres sold by Craig to S. Berry in 1801. To 3|- acres, the quantity remaining to Craig’s part,'after deducting 280, they are indisputably entitled. As B. Berry has obtained a deed for 289 as John B. Craig’s third, he has, according to his own showing, 5| acres more than J. H. Craig was entitled to; and as he did, for a valuable consideration, assent to the sale of the 16 acres by John Craig, in 1801, we are permitted to infer that it was mutually understood at that time, that S. Berry was to have the same right to the 116 acres then laid off to him, as he liad originally to tiie 100 acres as first bought by him in 1786. And consequently, as Endicut’s contract for 80 acres, (assigned by him to B. Berry, prior to ÍSQ1,} was posterior to the contracts made by B. Berry and S. Berry, in 1786, the latter must be fulfilled first, -and if there be only 2831 acres in Craig’s part, the deficit must fall on B. Berry as the holder of Endicut’s contract for 80 acres. This is the equitable consequence of what we infer to have been the understanding between Craig and B. and S. Berry, in 1801; and this inference is fortified by the partition-in 1805, and by the apparent aequiesence of all the parties for many years.
B. Berry’s deed for 289 acres must cover at least 15 of the 16 acres claimed by the appellees under the contract of 1801; and it seems to us that equity requires that his judgment of eviction should, to that extent at least, he enjoined, and that a conveyance should be made to the appellees.
It is impossible to ascertain what interest Fox’s heirs have in this controversy. In the opinion in III Mon. it is stated that three of the four heirs had conveyed all their right to B. Berry, but .th^t the *495 heirs of the fourth still retained their interest. Such a deduction is not authorized by the record as it is presented to us; nor can we decide, (as suggested in the record,) that B. Berry owns the interest of all the heirs. But be this as it may, B. Berry acted as the agent of the heirs, and, in that character, procured the partition to he made in 1805, sanctioning the contracts and surveys made in 1801. He and the heirs seem to have acquiesced ever since, until' about the year 1816, and do not even now complain of error or mistake in the partition, or ask for a repartition. VS herefore, should it turn out as intimated, that there may not he 283| acres remaining for Fox’s third, the deficit must be supplied from B. Berry’s excess, and the appellees lmv« now no concern in that matter. Moreover, there is no proof or allegation about the quality of the land, and' consequently, if there he any small deficit in quantity, this court cannot know that it was not supplied by an equivalent advantage in quality.
But there is no proof that; will allow this court to assume that J. Craig’s third will not exceed in quantity 283J acres. The appellees allege that between 800- and 1000 acres of the 1480 acres granted to Fox have been “sawed,’’-and that the quantity saved, is sufficient to entitle them to their entire ! 16 acres as surveyed in 1801. The appellants say that only, 900 acres had been saved, including the 50 acres covered by-Crow’s claim and the 33 acres purchased under the execution.' And there is no direct proof as to the quantity actually safe from the interference of better claims. But we are of the opinion that it was incumbent on the appellants, and not the appellees, to prows what quantity of land remains. The patent, the partition in 1805, the sale and the surveys in 1801, and the long acquiescence therein, are suffi-cient, prima facie, to authorize the presumption that -the quantity remaining is at least 900 acres, independently of the 50 acres covered by Crow. We -cannot, therefore, in the absence of proof, decide that there is not land enough to entitle those claiming under John Craig to 296 acres;, and consequently, even if a deficit in quantity could affect the equity of the appellees, the facts, as they are now repre *496 sented, would not allow a reversal of the decree oa that around.
Denny, Wickliffe ¿y Wooley, for appellants; Crittenden and Talbot, for appellees.
It is evident from the foregoing view, that there ---should be no decree for restitution of the 50 acres held by the appellees under Crow’s claim. Nor is there any sufficient ground established for any decree whatever in favor of the appellants or any of them.
Wherefore, the decree of the circuit court is affirmed.